Jeremiah BLACKWELL, Jr., et al., Appellants,

v.

ISSAQUENA COUNTY BOARD OF EDUCATION, et al., Appellees.

No. 22712.

United States Court of Appeals Fifth Circuit.

July 21, 1966.

Melvyn Zarr, Derrick A. Bell, Jr., New York City, Henry M. Aronson, Jackson, Miss., Carsie A. Hall, Jack H. Young, Jackson, Miss., Jack Greenberg, New York City, for appellants.

Will S. Wells, Asst. Atty. Gen., Jackson, Miss., J. Wesley Miller, Herman C. Glazier, Jr., Rolling Fork, Miss., for appellees.

Before GEWIN and THORNBERRY, Circuit Judges, and WEST, District Judge.

GEWIN, Circuit Judge.

The appellants filed a civil rights action under 42 U.S.C. § 1983 to enjoin pursuant to 28 U.S.C. § 1343 school officials from enforcing a regulation forbidding school children from wearing "freedom buttons" as a denial of First and Fourteenth Amendment rights under the United States Constitution.[1] The United States District Court for the Southern District of Mississippi refused to grant a preliminary injunction.

On Friday, January 29, 1965, approximately 30 pupils at the all-Negro Henry Weathers High School wore "freedom buttons" to class. The buttons were about an inch in diameter depicting a black and white hand joined together with "SNCC" inscribed in the margin. It was reported to the principal, Mr. O. E. Jordan, that some of these students were

---

1. Plaintiffs also filed suit under 42 U.S.C. § 1983 to enjoin the defendant school authorities from operating compulsory racially segregated school. This request for a preliminary injunction pursuant to 28 U.S.C. § 1343 was granted by the United States District Court for the Southern District of Mississippi.

creating a disturbance by noisily talking in the hall when they were scheduled to be in class and three students were brought to the principal's office where they were told that no one could be permitted to create a disturbance and that they would have to remove their buttons.

The following Monday, February 1, 1965, approximately 150 pupils came to school wearing the buttons. These students distributed buttons to students in the corridor of the school building and accosted other students by pinning the buttons on them even though they did not ask for one.[2] One of the students tried to put a button on a younger child who began crying. This activity created a state of confusion, disrupted class instruction, and resulted in a general breakdown of orderly discipline, causing the principal to assemble the students in the cafeteria and inform them that they were forbidden to wear the buttons at school.

At the assembly and also during conferences with the students immediately thereafter, several students conducted themselves discourteously and displayed an attitude of hostility.[3]

The next day, February 2, 1965, close to 200 students appeared wearing buttons. The students were assembled in the gymnasium where they were told that the rule forbidding them from wearing freedom buttons was necessary in order to maintain decorum and to keep from disturbing classrooms and other students; and if they returned to school again wearing buttons, they would be suspended.

The following day, February 3, 1965, the students returned to school wearing the buttons whereupon the principal immediately sent them home. As the students gathered their books to go home, classes were generally disturbed by students' comments inviting others to join

2. In an affidavit signed by all members of the Board of Trustees and the District Superintendent of one of the school districts is the following statement:

"A full hearing was given these parents, and the entire problem involved was explained to them. They were advised at that time that prior to the suspension of these students, *a general state of confusion existed in the classrooms and school buildings.* Many of these children were accosting other students in the corridors and halls of the buildings and *placing these pins on the clothing of children whether they wanted them or not,* and generally tried to persuade all of the students to wear and exhibit these buttons. The result was *a state of confusion, a disruption of class instruction and a general breakdown of orderly discipline.*" (Emphasis added)

3. The state of affairs which developed may be illustrated by the following excerpts from the affidavit of Principal O. E. Jordan:

"On February 1, 1965, more than one hundred students came to school wearing these buttons. Hazel Lamb, a teacher, reported to me that *students were going up and down the corridor passing out buttons* to those who did not have them and pinning buttons on other students who did not do so voluntarily. I investigated the matter and found this to be true. *This activity on their part* had created a state of confusion and had disrupted the orderly procedure at the school. I assembled all the students wearing buttons at the cafeteria and requested that they remove the buttons *so that some order of discipline* could be restored. Two students were particularly hostile to my request and displayed a nasty attitude. I told the students that since they were *creating such confusion* in the classrooms and in the corridor with the buttons, that they were forbidden to wear the buttons at school." (Emphasis added.)

\* \* \* \* \*

"At this time some of the students *had on as many as three buttons varying in size.* At this meeting, several of the students present took over from their leader and one boy, Dan White, went so far as to call me an 'Uncle Tom'. I dismissed them courteously with a statement that they could not attend school wearing buttons and *creating a disturbance* unless the Superintendent or the School Board overruled me." (Emphasis added.)

\* \* \* \* \*

"During this session a boy by the name of Morganfield became intolerably obnoxious. I dismissed the group and informed them that if they returned Wednesday wearing buttons that I would send them home."

them. One of the suspended students entered a classroom while class was in session, ignored the teacher and without permission importuned another student to leave class.[4] Before the students left, a bus driver, Charles Cole, entered the school building with a cardboard box full of buttons, and began distributing them and even entered a classroom without permission, offering buttons to the students. Also, some students after boarding the busses, re-entered the school building with buttons, trying to pin them on anyone walking in the hall, and some threw buttons into the building through the windows.[5]

More children were suspended during the week for button wearing. Parents of the suspended children met several times with the Superintendent, Mr. H. G. Fenton, and Mr. Jordan but no agreement was ever reached. Those children who continued to remain at home after a period of 20 days, approximately 300 from various elementary and high schools in the school district, were suspended for the balance of the school year.

On April 1, 1965, a mandatory preliminary injunction was sought to compel school officials to re-admit the suspended pupils and to allow them to wear freedom buttons so long as no disturbance resulted therefrom. The motion for preliminary injunction was noticed for hearing on April 23, but the hearing was not conducted until May 10 because the District Judge was engaged in holding court elsewhere. Relief was denied on May 17. It is asserted in appellees' brief that the school term was scheduled to end the latter part of May or the early part of June.

The issue presented on this appeal, whether the school regulation forbidding the wearing of "freedom buttons" is a reasonable rule necessary for the maintenance of school discipline or an unreasonable rule which infringes on the students' right to freedom of speech guaranteed by the First Amendment of the United States Constitution, is identical to that in Burnside et al. v. Byars et al., 363 F.2d 744 (5 Cir. 1966), decided simultaneously with this case. In that case we recognized that the right of students to express and communicate an idea, by wearing a freedom button inscribed with "One Man One Vote", was protected by the First Amendment guarantee of freedom of speech; but we also recognized that reasonable regulations, necessary for keeping orderly conduct during school session, could infringe upon such First Amendment rights. We held in Burnside that a school regulation

---

4. One of the teachers in her affidavit described this incident as follows:
   "On Wednesday, February 3, 1965, the day the children were suspended, I was trying to teach typing during the first period of classes. One of the children that had been suspended *came into my classroom, without permission and ignoring me and the classroom procedure*, and went over to one of my students, Recilla Rogers, and tried to get her to leave my class and get on the bus. She refused, saying that she was staying in school.
   "As the students were leaving to go home, some got on buses and then came back into the building with buttons, *trying to pin them on any that were just walking in the hall*, and some threw buttons back in the building through the windows. *All of this took place while the classes were going on.* This caused a general disturbance." (Emphasis added.)

5. The following additional statement from the affidavit of Principal Jordan illustrates conditions at this time:
   "Before the students left, a bus driver by the name of Charles Cole brought a cardboard box full of buttons and started distributing them down the Junior High wing of the school, as reported to me by a teacher. By the time I had gotten down there he had disappeared.
   "Before the school buses left, some of the parents came in and wanted to know why were the children being sent home. I stated that they were continually causing *disturbances with the buttons and their actions.* I explained to them that *students who did not want the buttons nor knew anything about them were being subjected to harassment by the ones that had them, and teachers were prevented from carrying on in the normal way."* (Emphasis added.)

forbidding the wearing of freedom buttons was unreasonable in that the presence of such buttons on school grounds did not cause a disturbance of classroom activities nor was such a rule necessary for the maintenance of order and discipline within the school under the facts and in the circumstances of that case. Therefore, we found such regulation to be an infringement upon students' protected right of free expression.

In the case now before us, the affidavits and testimony from the District Court present quite a different picture from the record in *Burnside* where no disruption of classes or school routine appeared in the evidence. Here, the District Court was presented with evidence of numerous instances, which have been set out in the statement of facts, where students conducted themselves in a disorderly manner, disrupted classroom procedure, interfered with the proper decorum and discipline of the school and disturbed other students who did not wish to participate in the wearing of the buttons. Despite the factual differences in the two cases, the question we must decide remains the same. Is the regulation forbidding the wearing of freedom buttons by school children reasonable? A reasonable regulation is one which is "essential in maintaining order and discipline on school property" and "which measurably contributes to the maintenance of order and decorum within the educational system." Burnside v. Byars et al., 363 F.2d 744 (5 Cir. 1966).

The facts demonstrate that during the time students wore freedom buttons to school, much disturbance was created by these students. Their actions in the school building are indeed reprehensible and the school officials certainly have the authority to mete out punishment as they deem appropriate for their dis-

courteous behavior toward school authorities, their disregard for the orderly progression of classroom instruction, and their complete disregard for the rights of their fellow students. The record clearly indicates that these actions by the students in distributing buttons, pinning them on others, and throwing them through windows constituted a complete breakdown in school discipline. It is necessary to prohibit students from using buttons or any other means of disrupting school routine in order to maintain discipline, therefore regulations against the distribution, pinning, and throwing of buttons as well as regulations prohibiting discourteous remarks to school personnel, the deliberate absence of a student from class without permission and loud conversation in halls and corridors which can be heard in classrooms are necessary if the school is to continue to properly instruct its students.

It is always within the province of school authorities to provide by regulation the prohibition and punishment of acts calculated to undermine the school routine. This is not only proper in our opinion but is necessary.

Cases of this nature, which involve regulations limiting freedom of expression and the communication of an idea which are protected by the First Amendment, present serious constitutional questions. A valuable constitutional right is involved and decisions must be made on a case by case basis,[6] keeping in mind always the fundamental constitutional rights of those being affected. Courts are required to "weigh the circumstances" and "appraise the substantiality of the reasons advanced" which are asserted to have given rise to the regulations in the first instance. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The

6. In Dennis v. United States, 341 U.S. 494, 508, 71 S.Ct. 857, 95 L.Ed. 1137, 1152 (1951), Mr. Chief Justice Vinson in commenting upon the earlier case of American Communications Asso. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, asserted the following:

"But we further suggested that neither Justice Holmes nor Justice Brandeis ever envisioned that a shorthand phrase should be crystallized into a rigid rule to be applied inflexibly without regard to the circumstances of each case."

**754**

constitutional guarantee of freedom of speech "does not confer an absolute right to speak" and the law recognizes that there can be an abuse of such freedom. The Constitution does not confer "unrestricted and unbridled license giving immunity for every possible use of language and preventing the punishment of those who abuse this freedom." Whitney v. People of State of California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927). The interests which the regulation seeks to protect must be fundamental and substantial if there is to be a restriction of speech. In Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), the Supreme Court approved the following statement of the rule by Chief Judge Learned Hand:

> "In each case [courts] must ask whether the gravity of the 'evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger."

In West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), involving a school board regulation requiring a "salute to the flag" and a pledge of allegiance, the Court was careful to note that the refusal of the students to participate in the ceremony did not interfere with or deny rights of others to do so and the behavior involved was "peaceable and orderly."

■■ In the instant case, as distinguished from the facts in *Burnside*, there was more than a mild curiosity on the part of those who were wearing, distributing, discussing and promoting the wearing of buttons. There was an unusual degree of commotion, boisterous conduct, a collision with the rights of others, an undermining of authority, and a lack of order, discipline and decorum. The proper operation of public school systems is one of the highest and most fundamental responsibilities of the state. The school authorities in the instant case had a legitimate and substantial interest in the orderly conduct of the school and a duty to protect such substantial interests in the school's operation. Again we emphasize the difference in the conduct

here involved and that involved in *Burnside*. In this case the reprehensible conduct described above was so inexorably tied to the wearing of the buttons that the two are not separable. In these circumstances we consider the rule of the school authorities reasonable. As we said in *Burnside*, "It is not for us to consider whether such rules are wise or expedient but merely whether they are a reasonable exercise of the power and discretion of the school authorities." There was an abundance of clear, convincing and unequivocal testimony which supported the action of the District Court in refusing to grant the requested preliminary injunction. We are unable to find an abuse of discretion.

The judgment is affirmed but without prejudice to the right of the appellants to relief upon final hearing if the facts justify such relief, emphasizing as we do the importance of the right of freedom of expression and communication as protected by the First Amendment, and the fundamental requirement that school officials should be careful in their monitoring of student expression in circumstances in which such expression does not substantially interfere with the operation of the school.

The judgment is affirmed.