Charles **EVERS** et al., Plaintiffs,

v.

T. B. **BIRDSONG** et al., Defendants.

**Civ. A. No. 1146.**

United States District Court

S. D. Mississippi, W. D.

July 24, 1968.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., District Judge.

On March 11, 1966, Charles Evers and two other named plaintiffs, residents of the State of Mississippi, filed a class action "on their own behalf and on behalf of all other persons in seeking to peacefully assemble and petition the President of Alcorn A. and M. College from redress of their grievances concerning the operation and administration of that College" and wherein plaintiffs sought a temporary restraining order and a preliminary and permanent injunction. In the complaint and by affidavit in support of an immediate restraining order, plaintiffs set forth that on the preceding Friday, March 4, 1966, they and 250 other Negro adults assembled at the entrance of the college on State Highway 552, which runs through the college grounds. Their intent was to march through the campus to the office of J. D. Boyd, president, to present a petition of grievances. They assembled on the left side of the highway, two abreast, under the supervision of marshals. With no singing or shouting, but in an orderly manner, they proceeded on the highway about 500 yards inside the college gate, where they were met by Vernon Maxwell, chief of the college security force, several members of the Mississippi State Highway Patrol, and Dan S. McCay, Sheriff of Claiborne County. Maxwell and McCay refused the marchers permission to continue, and when they nonetheless surged forward, approximately 235 were arrested.[1] Plaintiffs further alleged that they and approximately 1500 other persons intended to assemble again in a peaceful and orderly manner on March 12, for the same purpose. The complaint named as defendants, in addition to Boyd, Maxwell and McCay, T. B. Birdsong, head of the Mississippi Highway Patrol, Dr. Verner S. Holmes and S. R. Evans, president and vice-president of the Board of Trustees of the Institution of Higher Learning of the State of Mississippi, the remaining members of the Board, and Mrs. Celia Pritchard, Sheriff of Jefferson County, individually as well as in their official capacities, their agents, successors, employees and all those in concert with them.

At an immediate hearing on the same day the complaint and affidavit were filed, and despite the counter-affidavits of Holmes and Dr. E. R. Jobe, Executive Secretary of the Board of Trustees, that they had no knowledge of any grievances prior to a telegram sent by Evers on March 3, 1966,[2] and the counter affidavit of Boyd that his first knowledge of the alleged grievances was the attempted march of March 4, this Court issued a temporary restraining order allowing 200 marchers on March 12, 1966, to march from the eastern entrance of Alcorn College on Highway 552 to a point nearest the Administration Building, where a committee was permitted to proceed to Boyd's office and present a

---

1. On the night of March 4, 1966, the old hospital building on the campus was destroyed by fire, severely damaging the east end of the adjacent, new Fine Arts building.

2. Jobe and Dr. Holmes acknowledged that they received a telegram from Charles Evers on March 3 reading: "Request immediate investigation of administrative policies of Alcorn A. & M. College, Lorman, Mississippi, due to reported discrepancies in financial situations particularly those involving vending machines. Charles Evers, Field Director, N.A.A.C.P." Dr. Holmes responded by telephone and Jobe by telegram on the same day inviting Evers to meet with the Board at a regular or special meeting to present the grievances. The only response from Evers was that plans for the March 4 demonstration had gone too far to cancel.

petition of grievances, the whole group then returning to the point of assembly.[3] At the hearing of March 11, 1966, it was shown that Alcorn is a predominately Negro college of 1600 to 1700 students. It is sprawled over a large acreage in an isolated area of Claiborne County, some eight miles from the small town of Lorman. Nearest other towns include Port Gibson, Vicksburg and Natchez.

This march took place as ordered, orderly and with no interference. Had matters thereafter proceeded in like fashion there would have been nothing further to the lawsuit.

Evidence at the full hearing showed that Boyd promptly referred the grievances to the Board of Trustees.

On March 24, 1966, plaintiffs, by letter attempted to withdraw their complaint. No order was submitted or signed.

Meanwhile Evers continued with civil rights activities. On April 1, 1966, he staged a march at Port Gibson that terminated at the courthouse for a speech by Evers. Among the remarks were: "Next week we want all the children to stay out of school * * * On Monday (April 4) we will have the biggest march at Alcorn College that has ever been held in the south. We are going to march all over the campus. We are going to stay there until Dr. Boyd is gone * * * Boyd has got to go and Maxwell has too. * * * This is not a civil rights matter; this is negro against negro." On April 2, 1966, at the same place, Evers spoke to a group of 500 persons, repeating in essence the foregoing statements. On the morning of April 4, and during a school day,

bands of Negro elementary and high school children from Port Gibson and the surrounding community began swarming over the campus, finally gathering in front of Dr. Boyd's home. After the highway patrol had been called, the children circled the president's home, clapping, singing and calling obscenities to the patrolmen. They refused to disburse, the patrolmen chasing them throughout the day. Alcorn students joined in the disturbance, cursing the officers from dormitory and classroom windows, and around 11 a. m., started throwing bottles at the patrolmen and their vehicles. As the disturbance reached riot proportions, the patrolmen cleared one dormitory with tear gas, some of the occupants being among a total of 35 arrested. At noon Evers appeared outside the west gate of the campus and told Giles Crisler, investigator for the highway patrol: "Things will go on like this the rest of the day and tonight we are going to have a mass meeting." Evers then asked for permission to march on the Campus. Crisler replied by showing Evers an injunction issued by the Chancery Court of Claiborne County forbidding a march on the campus, which Evers said he had received notice of.[4] Evers then called approximately 200 school children together, congratulated them on what they had been doing, and told them to continue, saying: "We will get rid of Boyd or close down the college. * * * We will whip the hell out of Maxwell after he is fired. We don't want to kill him—just kick him and stomp him and beat the hell out of him." After this speech, Evers and one Rudy Shields continued to direct the children around the campus by using

---

3. Prior to the demonstration, Evers addressed the assembled crowd, and was quoted as saying, "Our white friends are dumber than I thought they were. We asked for permission to have 1500 people to march * * * they fell for the bait and we got exactly what we wanted." At the hearing, Evers admitted he made the statement, but denied he was referring to the Court.

4. The writ bears the date of April 2, 1966. Plaintiffs filed a petition for removal to this Court and the cause was docketed as No. 1149. The Court sustained defendants' motion to consolidate with this cause for trial. However, as no written order of consolidation appears of record, and as the petition for removal was not accompanied by bond, the Court proposes to remand this cause to the original state docket.

hand signals. At about 3 p. m. Evers called the children together, congratulating them again and telling them to come back that night for a mass meeting at Patton's Store, a small grocery store just outside the east entrance of the campus, where the crowds had been congregating for Evers' speeches. At about 7:15 p. m., a mass meeting got underway with speeches and singing. Evers led a large group to the west gate in an attempt to enter, where he was told by Sheriff McCay that he could not violate the state court injunction and that the students were so agitated by the day's events that a riot was impending. At this time McCay and several patrolmen were between a group of some 200 students and Evers and his crowd, and the situation was described as tense and dangerous. Evers and his group finally retired to Patton's Store where Evers at 9:30 p. m. made another speech, saying "No injunction, no patrol, nothing will stop us from marching on the campus. * * * This is not civil rights * * * it is negro against negro." He told the group to be back the next morning, April 5, and invited the college students to join them and close down the college.

The next day plaintiffs filed an amended complaint seeking authority to stage a demonstration on April 4, the preceding day, thus moot on its face, and again Evers met with approximately 200 school children, following which 50 or 60 of them climbed over and through the fences on to the campus, again surrounding Dr. Boyd's residence. There, Officer Maxwell attempted to disburse them with fire hoses, for which there was insufficient pressure, and a tear gas bomb which blew back on Maxwell. The children retreated when highway patrolmen walked up. At noon, Rudy Shields and Evers again directed the children with hand signals, and Evers again informed Crisler that the disturbances would continue, with a mass meeting scheduled for that night. At one time in the afternoon Evers was permitted to go through the campus on Highway 552 by car. At 5 p. m., a

group started assembling and reached approximately 1200 persons, and Evers spoke again. At 8:40 p. m., Evers directed the group to line up for a march on the campus. Crisler refused permission and Evers made another speech, saying "You all know how to go on; you are on your own now. There are 2000 students that want to march with us. * * * If you have any grievances against any highway patrolman, catch him by himself and beat the hell out of him." Again 200 to 300 students were behind the highway patrol, and Evers and his crowd in front. Evers called out, "Make a sandwich out of them." The crowd was unruly, the highway completely blocked with persons and vehicles. Crisler ordered them to clear the highway within two minutes. He and 12 other patrolmen started along the road to show Evers which cars to move when they were immediately surrounded. Upon Crisler's signal for the entire patrol to move up, bottles were thrown and five shots fired, none by highway patrolmen, who used tear gas. One carbine, and 30 rounds of ammunition, not recovered, were taken from a patrolman. A loaded rifle was taken from one of the demonstrators. In the short melee which followed, several demonstrators, as well as highway patrolmen, were injured, none seriously.

On the night of April 7, 1966, considerable damage was caused to college buildings, windows and doors were broken, and installations wrecked.

On April 13, 1966, at the request of the office of the Attorney General of the State of Mississippi, representing the Board of Trustees, a second hearing was had. Evers appeared in person and by counsel, moved for a continuance and voluntarily agreed not to lead in, participate in or counsel further demonstrations at Alcorn College pending a full hearing on the merits. The Court, by order of that date, granted plaintiffs motion for continuance, approved plaintiffs' agreement, directed defendants to answer the amended complaint and to

file their cross-complaint by April 27, 1966, with trial set for May 5, 1966.

On April 20, 1966, this Court issued an order for a "show cause" hearing on April 21 on a motion for civil and criminal contempt directed against Robert Lee Smith, Cleveland L. Sellers, Ransom Moore and Howard Edward Jeffries which motion alleged that as non-students of Alcorn College these four persons had on Monday night, April 18, 1966, committed trespasses by entering the campus and dormitories and attempting to create a disturbance. All four were alleged to be representing an organization known as Students Non-Violent Coordinating Committee (SNICK), and alleged to be plaintiffs by reason of one or more having acted in concert with Evers and other plaintiffs in the demonstrations detailed herein, and that each had notice of the order of April 13, 1966. This hearing was not had, as plaintiffs on the same day filed with the Fifth Circuit a Notice of Appeal for a stay of the interlocutory injunction in the April 13 order, which the Fifth Circuit on the following day, April 22, denied. On this same day a contractor's construction building located on the campus was burned and damages were committed to the interior and exterior of the Student Union building. On April 27, 1966, the pleading date set by the Court, defendants filed their answer and counter claims seeking an injunction against plaintiffs, and against any and all persons the Court finds to be plaintiffs, from leading, participating in or counseling any further demonstrations, riots or disturbances on or about the campus of Alcorn A. & M. College, and a money judgment in the sum of $15,709.-00 against plaintiffs in favor of the Board of Trustees of Institutions of Higher Learning of the State of Mississippi on account of damages to buildings and equipment, the sum of $32,819.75 against plaintiffs for costs, damage and expense to the Highway Patrol, and the sum of $2,000.00 in favor of Sheriff McCay for expenses and damages to him.

On defendants' motion for plaintiffs to show cause why they should not answer defendants' counter-claims by May 4, 1966, the day before that set for a full hearing, and upon plaintiffs' request for an additional continuance in order to have the full 20 days allowed by the rules in which to answer, this Court on April 5, granted plaintiffs' motion and re-set the case for May 30, 1966, continuing in effect the same restraint and injunction appearing in the April 13 order. On plaintiffs' motion to modify the latter part of the order, the Court denied on April 29. On May 23, 1966, a group of elementary and high school students led by Rudy Shields, appeared on the campus, singing and shouting and disrupting the commencement exercises. On May 27, 1966, plaintiffs moved for a third continuance on the grounds that they had not had sufficient time to complete discovery nor prepare for trial on defendants' counterclaims. The Court, by order dated June 8, 1966, granted plaintiffs' motion and re-set the case for July 13, 1966, again continuing the restraints and injunctions contained in the orders of April 13 and April 29, 1966. Again, plaintiffs filed Notice of Appeal, this time on the order of April 29, 1966 as set forth in the order of June 8, 1966.

The case was finally tried beginning on July 13, 1966. Plaintiffs, in December 1966, by motion to the Fifth Circuit, agreed to by defendants, requested an abeyance of the appeals pending a decision by this Court. No such notice was given this Court until September 25, 1967, followed by an order from the office of the Clerk of the Fifth Circuit, dated January 4, 1968, notifying the parties that the appeals would be dismissed, and which has since been so ordered. During the six day trial witnesses for both parties testified at length, identifying numerous photographs, movie reels, and correspondence, the gist of the evidence being related above as the findings of fact of the Court. There was also detailed evidence presented by defendants on their cross-claims of property damage and expenses.

There are two issues presented by this case. Are the plaintiffs an identifiable group subject to the notice required by Federal Civil Rule 65, and against whom liability for damages may be assessed, and to what extent can either side be restrained, on the one hand without interfering with the rights of the plaintiffs to peaceful assembly and presentation of grievances, and on the other without judicial usurpation of administrative functions of school officials and the duty of law enforcement officials to maintain order.

This action was filed as a class action under Rule 23(a) (3) before its amendment of July 1, 1966. The class was described as the named plaintiffs, Evers, Russell, and Warren and "all other persons in seeking to peacefully assemble and petition the President of Alcorn A. and M. College for redress of their grievances concerning the operation and administration of that college." With nothing more, the Court would dismiss the action for lack of definitiveness of the class, there being nothing to show whether or not the characterization included parents, taxpayers, alumni, friends, employees, or students of the college, the marchers, the demonstrators, the crowds who attended mass meetings, or even the grade school children used as pawns to harass and mock school and law enforcement officials. Plaintiffs insist in their post trial brief that the class includes those marchers who participated in the March 4, 1966 demonstration, but furnish no names. The Court finds that to this group should be added all those who participated in marches, demonstrations and incidents occurring in and about the campus of Alcorn College during the months of March and April 1966, specifically including the named plaintiffs, and Rudy Shields, Robert Lee Smith, Cleveland Sellers, Ransom Moore and Howard Edward Jeffries. A majority of these persons' names appear on lists furnished by defendants as Exhibits D and E to Answers to Interrogatories, filed in the record on May 26, 1966, but not introduced at the trial. Plaintiffs' counsel are directed to notify all such persons that they are members of the class of plaintiffs herein and subject to the orders of this Court, unless within 60 days of this date, any show cause to be excluded.

This is another case where protected rights of peaceful assembly and for redress of grievances must be weighed against the administrative prerogatives of school officials and the duty of law enforcement personnel to maintain order, and protect public property. By constitutional authority and statute the Board of Trustees of Institutions of Higher Learning of the State of Mississippi is charged with the management and control of state institutions of higher learning of which Alcorn College is one. This authority is delegable to the school president and his officials, who must be given wide discretion in anticipating and preventing interruptions in the class room and student activities for which the school is operated. Tinker v. Des Moines Independent Community School District, D.C., 258 F.Supp. 971, and Blackwell v. Issaquena County Board of Education, 5 Cir., 363 F.2d 749. School campuses are not public in the sense of streets, courthouses, and public parks, open for expressions of free speech by the public. A college campus, particularly in an isolated area as is Alcorn, is vulnerable to the attentions occasioned by even the most orderly parade or assembly. The protest here is not so much that of plaintiffs' arrests for trespass following their initial march of March 4, 1966, on to campus property, but that they cannot continue freely to assemble on the campus to again and again voice their alleged protests in marching, clapping, and singing without restraint.

It was on the assumption that plaintiffs had a right to express legitimate grievances against school policies that the Court overrode the defendants' objections and permitted the march of March 12, 1966, with reasonable and appropriate guide lines, recognizing that

grievances often are shunted aside. However, there was never any relaxation by this Court of its awareness of the school's right and duty to proceed with institutional education without unwarranted invasion by plaintiffs. Plaintiffs or others, at their instigation, deliberately returned to the campus time and again, marching, clapping, singing and hurling obscenities at school officials and highway patrolmen duly authorized to be there. Eventually, college students were aroused to such a pitch that buildings were burned and equipment wantonly damaged.

■ It makes no difference as to the cause—whether it be just, holy or "negro against negro" as alleged, there is nothing in the constitution or law for lawlessness, violence or destruction of property under the guise of petition and protest.

The right of free speech, assembly or protest has never been so judicially enlarged as to permit disruption of a school and destruction of its property. It would seem more logical to assume that it is the duty of school officials to protect students from such disruptions related above, and for law officials of the state to protect its property from destruction.

The Court finds that plaintiffs' action should be dismissed, and that upon defendants' counter action, plaintiffs and their class, described above, should be permanently enjoined and restrained from inciting, leading, participating in or counseling any marches, demonstrations or disturbances on the campus of Alcorn College.

■ As to the damages sought by defendants, the Court would be inclined to allow the claim of the School Board and the State of Mississippi for damages to buildings and equipment. However, in the absence of evidence that those who caused the damage are identifiable

members of the plaintiffs' class, the Court reluctantly foregoes this assessment.

An appropriate order may be drawn providing for notice by plaintiffs' counsel [5] of said order to all plaintiffs named herein.

---

5. As has happened before in numerous civil rights cases before this Court, plaintiffs are represented by a succession of attorneys, in this case, sixteen, none of whom have been released as attorneys and counsel of record, and few of whom have left any forwarding address.