417 F.2d 1127
 Thomas J. SAUNDERS, Appellant,
v.
The VIRGINIA POLYTECHNIC INSTITUTE, as represented by T.
Marshall Hahn, Jr., President of Virginia Polytechnic
Institute, James W. Dean, Vice-President of Virginia Student
Affairs, Polytechnic Institute, M. P. Lacy, Dean of
Admissions of Virginia Polytechnic Institute, Leslie F.
Malpass, Vice-President for Academics, Virginia Polytechnic
Institute, J. Gordon Brown, Dean for Student Services,
Virginia Polytechnic Institute, Appellees.
 No. 13903.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 8, 1969.
Decided Nov. 10, 1969.
 
 Robert P. Dwoskin, Roanoke, Va., for appellant.
 Richard N. Harris, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, and Walter H. Ryland, Asst. Atty. Gen. of Virginia, on brief), for appellees.
 Before WINTER, CRAVEN and BUTZNER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 On the facts of this case we must decide how a conflict between a student's first amendment right to register dissent and the power of a state university to control activities on its campus is to be resolved. The district court denied the student, Thomas J. Saunders (Saunders), a preliminary injunction against the refusal of Virginia Polytechnic Institute (VPI) to readmit him, and dismissed his complaint. Saunders has appealed. Because classes were about to begin, Circuit Judge John D. Butzner, Jr. stayed the effect of the district court's order and enjoined VPI, until further order of this Court, from denying readmission to Saunders for the 1969 fall term, so as to preserve the status quo and to prevent irreparable injury to Saunders. We conclude that the order of the district court should be reversed, and the preliminary injunction extended.
 
 
 2
 In the spring of 1969, Saunders was a student at VPI. Through two and one-half years at the school he had maintained an unusually high academic average and an unblemished disciplinary record. His campus activities in opposition to the war in Vietnam had been articulate and persistent. On April 28, 1969, he resigned from VPI because of his heavy involvement in extra-curricular activities. Simultaneously, he applied for readmission for the fall quarter which began in September, 1969. On May 6, VPI informed Saunders that he had been accepted for readmission in the fall quarter and that he would receive the 'formal notice of readmission' sometime in August.[1] It required the return of a signed form to signify acceptance of readmission. Saunders signed and returned the form on May 7.
 
 
 3
 On May 23, VPI announced that General William G. Westmoreland, Army Chief of Staff, would be the speaker at the commissioning exercises for the VPI reserve officer training corps contingents. These exercises were to be held on June 7 during VPI's commencement week-end. The 'Committee for Peace in Vietnam,' a campus group of which Saunders was a member, planned an anti-war demonstration at these exercises. The demonstration took place. It was peaceful and did not disrupt the ceremonies. On June 7, all classes and examinations for the quarter had been completed. The term itself was concluded, except for the next day's commencement exercises at which attendance was not compulsory.
 
 
 4
 Saunders was warned both before and during the demonstration that his participation would violate school policy. The warnings referred to a policy contained in a document entitled 'Procedures to be Observed in the Event Disruptive Activities Develop on Campus.' This document set forth the following rule:
 
 
 5
 'If there are any individuals who are not matriculated students or staff of the University participating in picketing, demonstrations or similar activities * * * on * * * campus, these individuals will immediately be asked to leave * * *. In the event such individuals refuse to leave when requested, they will immediately be subject to arrest.'
 
 
 6
 These warnings to Saunders proceeded, of course, on the administrative determination that he was not a 'matriculated student' and, hence, was not within the group from which peaceful picketing, demonstrations or similar activities would be tolerated.[2] Despite the warnings, Saunders persisted in his participation.
 
 
 7
 Subsequently, VPI denied Saunders readmission, solely on the ground that he had violated school policy by taking part in the demonstration. No person who engaged in the demonstration was arrested, and no other student was disciplined in any way.
 
 
 8
 VPI is a state-supported and state-owned institution. Therefore, Saunders contends that VPI's action contravened his first amendment rights. He urges us to hold, inter alia, that, short of violent or disruptive activities, he and all other members of the public had the right to be present on the VPI campus to register an anti-war protest. VPI responds to this claim with the assertion that it has the power to exclude from the campus persons whose presence would be detrimental to its well-being.[3] It also contends that 'matriculated students' have the right to engage in campus demonstrations and since Saunders was not a matriculated student, he was properly denied readmission for having participated in the peaceful, non-obstructive demonstration of June 7. VPI also urges us to hold that a state-supported university is not a public forum available for the expression of dissent by persons who are not members of the academic community. In our view, proper resolution of this case does not require us to reach this issue.
 
 
 9
 Tinker v. Des Moines Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), is the premise upon which our decision rests. In holding that the wearing of black armbands by students to protest the war in Vietnam was closely akin to 'pure speech,' an activity for which the students could not be disciplined, the Supreme Court reiterated the principle that teachers and students have available first amendment rights which are to be 'applied in light of the special characteristics of the school environment.' Id., at 506, 89 S.Ct. at 736. Specifically, the case rejected the notions that these rights may be limited by 'undifferentiated fear or apprehension of disturbance,' 'confined to the expression of those sentiments that are officially approved,' or restricted 'to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.' Id., at 508, 511, 509, 89 S.Ct. at 737, 739, 738. The essence of the holding, as well as a description of its scope, appears in the following language of the Court:
 
 
 10
 'The principal use to which the schools are dedicated is to accommodate students during prescribed hours for the purpose of certain types of activities. Among those activities is personal intercommunication among the students. This is not only an inevitable part of the process of attending school. It is also an important part of the educational process. A student's rights therefore, do not embrace merely the classroom hours. When he is in the cafeteria, or on the playing field, or on the campus during the authorized hours, he may express his opinions, even on controversial subjects like the conflict in Vietnam, if he does so '(without) materially and substantially interfering with * * * appropriate discipline in the operation of the school' and without colliding with the rights of others. Burnside v. Byars, 363 F.2d 744, 749 (5th Cir. 1966). But conduct by the student, in class or out of it, which for any reason-- whether it stems from time, place, or type of behavior-- materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guaranty of freedom of speech. Cf. Blackwell v. Issaquena City Board of Education, 363 F.2d 749 (C.A.5th Cir. 1966).' Id., at 512-513, 89 S.Ct. at 739-740.
 
 
 11
 The fundamental nature of all first amendment rights requires an evaluation of VPI's contention that it had the power to discipline Saunders because he was not a 'matriculated student' while it admits that it lacks like authority over the other students who participated in the demonstration. The argument we find unpersuasive. A student's freedom to express peaceful dissent on campus is more than a privilege; Tinker tells us that it is a basic right guaranteed by the first amendment. A state university is powerless to restrict or deny it as long as it is not obstructive or disruptive. Therefore, in order to justify a classification which denies that right to Saunders, VPI must show that its classification reflected fundamental and basic differences and that it was 'necessary to promote a compelling governmental interest.' Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969) We think that these differences are totally lacking here, and we find no 'compelling governmental interest' to support the classification.
 
 
 12
 At the time that the peaceful, orderly and nondisruptive demonstration took place,[4] Saunders' status was not different to any marked degree from that of the students whose rights of expression were respected. Of course, Saunders either had not received, or did not have the right to receive, grades for the expiring semester because he had resigned. But his right to attend classes in the fall was neither greater nor less than those who demonstrated with impunity. Even students who had completed the semester were required to apply for readmission to the fall session. Like Saunders, their right to be readmitted had not yet vested because they could have been denied readmission for a violation of VPI rules. Whatever the significance to VPI between a 'matriculated student' and one in Saunders' position for its own administrative purpose, we deem the difference too insubstantial to deny Saunders his right of free expression.
 
 
 13
 We reject VPI's argument that it must restrict participation in campus demonstrations to 'matriculated' students for the reason that the conduct of persons who are not members of its academic community is not subject to its control because its disciplinary procedures cannot be used to deter the possibility of disruption. Saunders was as much a part of the academic community as those whose participation went undisciplined, and the attempted denial of readmission to Saunders shows that in a proper case VPI is not powerless. In any demonstration which transcends the proper exercise of free speech, we have no doubt that VPI has full access to non-campus police to quell the disturbance or disruption.
 
 
 14
 We do not reach VPI's additional argument that when outsiders participate in campus demonstrations there is necessarily a greater potential for disruption than is characteristic of demonstrations limited to students. The argument is inapplicable to Saunders, because from past association and tentative future acceptance, he was no less a member of the academic community than the other students whose rights were respected.
 
 
 15
 We hold, therefore, that VPI's denial of readmission to Saunders violated his first amendment right, that the disciplinary action must be set aside and Saunders reinstated. The district court should extend the preliminary injunction which this Court granted and make it permanent if there are no remaining areas of proof to be explored.
 
 
 16
 Reversed and remanded.
 
 
 
 [1]
 The May 6 notice entitled 'Acceptance for Readmission' was characterized by VPI's president as a 'tentative acceptance for readmission.' It stated that Saunders would receive his 'formal notice of readmission' sometime in August. Except for students attending the optional summer session, all students completing the spring semester are required to apply for readmission for the new academic year beginning in the fall, and all would receive a notice of tentative readmission to be followed by a formal notice of readmission during the summer. The president testified that a formal notice of readmission would issue unless the student, in the interim after the notice of tentative readmission, developed psychiatric problems, committed a crime of violence or encountered other difficulties. After the 'formal notice of readmission' issues, Saunders and all other students would have been required to register in September, choose or be assigned their courses, pay their tuition and, where applicable, pay dormitory fees to enable them to attend classes
 
 
 [2]
 It should be repeated that because the demonstration occurred on the eve of the close of the term, no students were required to attend classes or examinations at that time and the commencement, at which attendance was not compulsory, was the only event yet to occur to terminate the semester. All, except those who were registered to attend the summer session, were required to apply for readmission for the fall term. Thus, except for students who may have elected to attend the optional summer session, Saunders appears to have been in no different relationship vis-a-vis VPI than 'matriculated students.'
 
 
 [3]
 In support of this argument, VPI refers to its 'Conduct Code.' This document, inter alia, guarantees to every student 'the right of petition and privilege of suggestion and objective criticism.' It further states that students (not just 'matriculated' students) who are found guilty of violating any university policy or regulation 'will be disciplined by the appropriate university official who may assess any punishment, including suspension or dismissal from the university.' It finally provides specificall for suspension, which may be for an indefinite period, for any 'failure to observe the rules and regulations issued by authorized university officials.' VPI argues that because the 'Conduct Code' would have permitted Saunders' suspension had he been a student, it is a relevant criterion for VPI's exercise of its inherent powers
 
 
 [4]
 That the demonstration was of this nature makes inapplicable the non-italicized language from Tinker quoted supra, p. 1130, and immediately distinguishes the case from Blackwell v. Issaquena City Bd. of Educ., 363 F.2d 749 (5 Cir. 1966); Barker v. Hardway, 399 F.2d 638 (4 Cir. 1968), cert. den., 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1969); and Powe v. Miles, 407 F.2d 73 (2 Cir. 1968)