**Mrs. Margaret BURNSIDE et al.,
Appellants,**

v.

**James BYARS et al., Appellees.**

No. 22681.

United States Court of Appeals
Fifth Circuit.

July 21, 1966.

---

———◆———

Henry M. Aronson, Jackson, Miss., Melvyn L. Wulf, New York City, Anthony G. Amsterdam, Philadelphia, Pa., of counsel, for appellants.

Will S. Wells, Asst. Atty. Gen., Jackson, Miss., J. Wesley Miller, Special Counsel, Rolling Fork, Miss., Herman C. Glazier, Jr., Special Counsel, Rolling Fork, Miss., Joe T. Patterson, Atty. Gen. of State of Mississippi, James E. Rankin, Sp. Asst. Atty. Gen. of State of Mississippi, Jackson, Miss., for appellees.

Before GEWIN and THORNBERRY, Circuit Judges, and WEST, District Judge.

GEWIN, Circuit Judge:

Plaintiffs brought a civil rights action under 42 U.S.C. § 1983 for a preliminary injunction pursuant to 28 U.S.C. § 1343 against officials of the Booker T. Washington High School of Philadelphia, Mississippi. It was alleged that plaintiffs' children's rights under the First and Fourteenth Amendments of the United States Constitution were breached by school officials in that they denied to the children the right to wear "freedom buttons" while attending school.[1] Plaintiffs appeal from the order of the United States District Court for the Southern District of Mississippi denying a preliminary injunction.

Several days prior to September 21, 1964, Mr. Montgomery Moore, Principal of the Booker T. Washington High School of Philadelphia, Mississippi, learned that a number of his students were wearing "freedom buttons" obtained from the headquarters of the COFO [1a] organization which had been established in Philadelphia, Mississippi. The buttons were circular, approximately 1½ inches in diameter, containing the wording "One Man One Vote" around the perimeter with "SNCC" inscribed in the center. Thereupon he announced to the entire student body that they were not permitted to wear such buttons in the school house or in their various classes. Mr. Moore testified that this disciplinary regulation[2] was promulgated because the buttons "didn't have any bear-

---

1. In the original pleadings plaintiffs alleged that the children were expelled from school for advocating the lawful and peaceful abolition of racial segregation in Mississippi, which is protected by the First, Fifth, Thirteenth, Fourteenth and Fifteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 et seq. under the Civil Rights Act of 1964; that the acts of the school officials violated plaintiffs' children's rights under the First, Fifth, and Fourteenth Amendments to the Federal Constitution to due process of law, equal protection of law and the privileges and immunities of the law; and that the acts of the school officials constituted a conspiracy to deprive the children of their rights to the equal protection of the laws and of equal privileges and immunities under the laws in violation of the First, Fifth and Fourteenth Amendments to the Federal Constitution as protected by Title 42 U.S.C. § 1985(3). These allegations were not raised in the District Court and are not in issue on appeal.

1a. Council of Federated Organizations.

2. Authority for the issuance of such disciplinary regulation was based on The Student Handbook, 1962–1963, which provides in paragraph G:

"Regulations for Student Conduct: Discipline is looked upon by the administration as a means to accomplish two primary purposes: (a) to insure students and teachers against annoying, distracting or disorderly conduct which results in the loss of valuable time and learning opportunities; (b) to help develop within each student the capacity for enlightened self control."

The wearing of buttons in the school was not unusual. On former occasions students had worn what they described as "Beatle buttons" and buttons containing initials of students, and the words "His" and "Hers". The wearing of buttons had not been proscribed on these prior occasions.

ing on their education," "would cause commotion," and would be disturbing [to] the school program by taking up time trying to get order, passing them around and discussing them in the classroom and explaining to the next child why they are wearing them." Despite Mr. Moore's announcement, on September 21, 1964, three or four children appeared at school wearing the buttons. All were given an opportunity to remove the buttons and remain in school but three of the children elected to keep them and return home. The following day all the children returned to school without their buttons. On the morning of September 24, 1964, Mr. Moore was summoned to the school by one of the teachers who reported that 30 or 40 children were displaying the buttons and that it was causing a commotion.[3] Mr. Moore then assembled the children in his office, reminded them of his previous announcement, and gave them the choice of removing their buttons or being sent home. The great majority elected to return home and Mr. Moore thereupon suspended them for a period of one week. Mr. Moore then delivered a letter[4] to each parent concerning the suspension, and all parents agreed to cooperate in the matter except Mrs. Burnside, Mrs. English and Mrs. Morris, whereupon injunctive proceedings were instituted against the school officials to enjoin them from enforcing the regulation.

Appellants contend that the school regulation forbidding "freedom buttons" on school property is an unreasonable rule which abridges their children's First and Fourteenth Amendment freedom of speech. It is the contention of the appellees that the regulation imposed by the principal is reasonable in maintaining proper discipline in the school and the District Court did not abuse its discretion in declining to issue a preliminary injunction.

The Negro school children who attended an all Negro high school wore the "freedom buttons" as a means of silently communicating an idea and to encourage the members of their community to exercise their civil rights.[5] The right to communicate a matter of vital public concern is embraced in the First Amendment right to freedom of speech and therefore is clearly protected against infringement by state officials. Thornhill v. State of Alabama, 310 U.S. 88, 101, 60 S.Ct. 736, 84 L.Ed. 1093, 1102. Particularly, the Fourteenth Amendment protects the First Amendment rights of school children against unreasonable

---

3. "Mr. Wells: When you got there what was reported to you by Mr. Murdy?
   "Mr. Moore: That it had disturbed the class as students wanted to see them. And, of course, they had been passing them around the hall before they went into class."

4. The letter stated:
   "Dear Parent: This is to inform you that your child has been suspended from school until you can come and have a talk with me. It is against the school policy for anything to be brought into the school that is not educational."

5. "Mr. Aronson: What were you trying to do with these buttons?
   "Miss English (age 14): The reason we were wearing them is for our rights.
   "Mr. Aronson: What rights were you concerned with?
   "Miss English: Our rights to speech and to do the things we would like to do.

"Mr. Aronson: What kind of things would you like to do?
   "Miss English: Go uptown and sit in the drugstores and wherever we buy things uptown we can sit down and won't have to walk right out at the time we get it.
   "Mr. Aronson: What else?
   "Miss English: And to register and vote without being beat up and killed."
   *    *    *    *    *
   "Mr. Aronson: It says 'One Man One Vote'. What does that mean to you?
   "Miss Jordon (age 16): I wanted to try to help the people to make them understand, why I wore this pin, because I wanted them to go up to the court house and register to vote.
   "Mr. Aronson: What people?
   "Miss Jordon: The colored people in our community.
   "Mr. Aronson: Do they vote in Philadelphia?
   "Miss Jordon: No, Sir."

rules and regulations imposed by school authorities.

"The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted."

West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628, 1637.

■ But the liberty of expression guaranteed by the First Amendment can be abridged by state officials if their protection of legitimate state interests necessitates an invasion of free speech. Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 95 L.Ed. 1137, 1153; Whitney v. People of State of California, 274 U.S. 357, 376, 47 S.Ct. 641, 71 L.Ed. 1095, 1106. The interest of the state in maintaining an educational system is a compelling one, giving rise to a balancing of First Amendment rights with the duty of the state to further and protect the public school system. The establishment of an educational program requires the formulation of rules and regulations necessary for the maintenance of an orderly program of classroom learning. In formulating regulations, including those pertaining to the discipline of school children, school officials have a wide latitude of discretion. But the school is always bound by the requirement that the rules and regulations must be reasonable. It is not for us to consider whether such rules are wise or expedient but merely whether they are a reasonable exercise of the power and discretion of the school authorities.

■■ Regulations which are essential in maintaining order and discipline on school property are reasonable. Thus school rules which assign students to a particular class, forbid unnecessary discussion in the classroom and prohibit the exchange of conversation between students are reasonable even though these regulations infringe on such basic rights as freedom of speech and association, because they are necessary for the orderly presentation of classroom activities. Therefore, a reasonable regulation is one which measurably contributes to the maintenance of order and decorum within the educational system.

■ The regulation which is before us now prohibits the wearing of "freedom buttons" on school property. The record indicates only a showing of mild curiosity on the part of the other school children over the presence of some 30 or 40 children wearing such insignia. Even the principal testified that the children were expelled not for causing a commotion or disrupting classes but for violating the school regulation. Thus it appears that the presence of "freedom buttons" did not hamper the school in carrying on its regular schedule of activities; nor would it seem likely that the simple wearing of buttons unaccompanied by improper conduct would ever do so. Wearing buttons on collars or shirt fronts is certainly not in the class of those activities which inherently distract students and break down the regimentation of the classroom such as carrying banners, scattering leaflets, and speechmaking, all of which are protected methods of expressions, but all of which have no place in an orderly classroom. If the decorum had been so disturbed by the presence of the "freedom buttons," the principal would have been acting within his authority and the regulation forbidding the presence of buttons on school grounds would have been reasonable. But the affidavits and testimony before the District Court reveal no interference with educational activity and do *not* support a conclusion that there was a commotion or that the buttons tended to distract the minds of the students away from their teachers. Nor do we think that the mere presence of "freedom buttons" is calculated to cause a disturbance sufficient to warrant their exclusion from school premises unless there is some student misconduct involved. Therefore, we conclude after carefully examining all the evidence presented that the regulation forbidding the wearing of "freedom buttons" on school grounds is arbitrary and unreasonable,

and an unnecessary infringement on the students' protected right of free expression in the circumstances revealed by the record.

 We are well aware of the rule that the granting or denial of an application for preliminary injunction is within the sound judicial discretion of the court to which application is made; and we have not failed to give full consideration to that sound principle of law. Under the facts and in the circumstances of this case, however, we are impelled to the conclusion that there was an abuse of discretion in refusing to grant the application. See Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834; Brewer v. Huger, 358 F.2d 739 (5 Cir. 1966); Joseph Brancroft & Sons Co. v. Shelly Knitting Mills, 268 F.2d 569 (3 Cir. 1959); Burton v. Matanuska Valley Lines, 244 F.2d 647 (9 Cir. 1957).

We wish to make it quite clear that we do not applaud any attempt to undermine the authority of the school. We support all efforts made by the school to fashion reasonable regulations for the conduct of their students and enforcement of the punishment incurred when such regulations are violated. Obedience to duly constituted authority is a valuable tool, and respect for those in authority must be instilled in our young people.

But, with all of this in mind, we must also emphasize that school officials cannot ignore expressions of feelings with which they do not wish to contend. They cannot infringe on their students' right to free and unrestricted expression as guaranteed to them under the First Amendment to the Constitution, where the exercise of such rights in the school buildings and schoolrooms do not materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.

The order entered by the District Court denying the preliminary injunction sought is hereby vacated, the judgment is reversed and the cause is remanded with directions to the District Court to grant a preliminary injunction enjoining the officials of the Booker T. Washington High School from the enforcement of the disciplinary regulation forbidding their students from wearing "freedom buttons" on the school premises. Although there was a full evidentiary hearing in which the facts were rather fully developed, such judgment and order by the District Court shall be without prejudice to the making of a further order and judgment if additional, different or more complete facts are developed upon final hearing which would authorize the entry of such additional judgment.

Reversed and remanded with directions.