**Evoila Wilson POUND et al., Plaintiffs,**

**v.**

**Charles HOLLADAY et al., Defendants.**

**No. EC 71-5-S.**

United States District Court,
N. D. Mississippi, E. D.

Feb. 17, 1971.

James A. Lewis, John C. Brittain, Jr., Oxford, Miss., for plaintiffs.

W. P. Mitchell, of Mitchell, Rogers & Eskridge, Tupelo, Miss., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This action is before the court for disposition on its merits. The court entered a preliminary injunction on January 19, 1971, to preserve the status quo of the parties until the action could be heard on the merits.

A full hearing was accorded the parties on February 9, 1971 at which time the evidence presented by each party was received by the court.

The court's findings of fact and conclusions of law follow and will determine the outcome of this litigation.

Plaintiff, David Lee Pound, is a minor 16 years of age. He is a student in the eleventh grade at the Tupelo High School, Tupelo, Mississippi, and brings this action by his mother and next friend, Evoila Wilson Pound. Plaintiff, James Allen McGregor, is a minor 19 years of age. He is a student in the eleventh grade at the high school aforesaid, and brings this action by his mother and next friend, Mrs. Elsie McGreg-

or. Joe Woody, Jr. is a married minor 19 years of age. He is a student in the twelfth grade at said school, and brings this action in his own behalf.

The three plaintiffs and twenty-four other high school male students were suspended from school on Monday, January 4, 1971 for violation of the Dress Code of the school relating to hairstyles. They were suspended and directed not to return to classes until their hairstyles were brought within the hairstyle regulation of the Code.

The other twenty-four students complied with the request. They secured a hair cut and returned to classes. The three plaintiffs refused to abide by the directive, contending the regulation violated their constitutional rights in that the regulation is unreasonable, arbitrary and unsupported by any legitimate school need.

On Tuesday, January 5, 1971, plaintiffs through counsel requested a disciplinary hearing by school authorities. Such a hearing was afforded them on Friday, January 8, 1971. Plaintiffs participated in the hearing and were represented by counsel. A transcript of the proceedings has been filed with the court. The transcript reflects that plaintiffs were accorded due process in every respect.

After the hearing plaintiffs were promptly notified that they would be suspended indefinitely until their hair was cut to conform with the regulation governing hairstyles for male students. The action sub judice has been instituted to determine the rights of the respective parties.

Plaintiffs do not contend that they were not afforded due process and a fair hearing on their grievances. They attack the regulation as being unconstitutional on its face, and seek a declaratory judgment that the regulation is unconstitutional and an injunction prohibiting the implementation of the regulation.

This action is ripe for adjudication by the court since the plaintiffs have exhausted all administrative remedies available to them. The federal courts

require such prior reference to local institutional authority as may be necessary to assure that the action complained of is final within the institution before the court will undertake to adjudicate the issue. Stevenson v. Board of Education of Wheeler County, Georgia, 426 F.2d 1154 (5 Cir. 1970).

There are numerous decisions of federal district and appellate courts dealing with cases involving hairstyle regulations for male students by school authorities. The great majority of the cases are recent and for the most part stem from the holding of the Supreme Court of the United States in Tinker v. Des Moines Independent Community School District, 1969, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731.

In *Tinker* the court dealt with a problem created when two high school students and one junior high school student wore black armbands to their schools to publicize their objections to the hostilities in Vietnam and their support for a truce, despite the fact that they were aware that school authorities a few days previously had adopted a policy or regulation that any student wearing an armband to school would be asked to remove it, and if he refused would be suspended until he returned without the armband. As a result the students were sent home and suspended from school until they would come back without their armbands. The students sought an injunction restraining school authorities from disciplining them. The District Court dismissed the complaint upholding the constitutionality of the action of the school authorities on the ground that it was reasonable in order to prevent disturbance of school discipline. The United States Court of Appeals for the Eighth Circuit affirmed the District Court's decision.

The Supreme Court held that the wearing of the armbands in the circumstances of the case was entirely divorced from actual or potentially disruptive conduct by those participating in it and was closely akin to "pure speech", which was entitled to comprehensive protection under the First Amendment.[1]

The court also held that First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students.[2] The court said:

"In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in of the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained. Burnside v. Byars, supra [5 Cir.] 363 F.2d 744, at 749." [3]

The court held, however, that "the problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment".[4]

There is no need for the court to discuss or analyze cases from other jurisdictions. The controlling law in the case has been clearly established in this jurisdiction by the United States Court of Appeals for the Fifth Circuit. Ferrell v. Dallas Independent School District, 392 F.2d 697 (5 Cir. 1968); Davis v. Firment, 408 F.2d 1085 (5 Cir. 1969); Griffin v. Tatum, 425 F.2d 201 (5 Cir. 1970); see also Stevenson v. Board of Education of Wheeler County, Georgia, 426 F.2d 1154 (5 Cir. 1970) (a case involving a school regulation concerning shaving).

1. 393 U.S. at 505, 89 S.Ct. at 736, 21 L. Ed.2d at 737.

2. Id.

3. 393 U.S. at 509, 89 S.Ct. at 738. Id. at 739.

4. 393 U.S. at 507, 89 S.Ct. at 737. Id. at 738.

In *Ferrell,* supra, the court upheld a school regulation banning long hair, holding that the regulation was not arbitrary, unreasonable, or an abuse of discretion. The court said:

"The Constitution does not establish an absolute right to free expression of ideas, though some might disagree. The constitutional right to free exercise of speech, press assembly, and religion may be infringed by the state if there are compelling reasons to do so.

The compelling reason for the State infringement with which we deal is obvious. The interest of the state in maintaining an effective and efficient school system is of paramount importance. That which so interferes or hinders the state in providing the best education possible for its people, must be eliminated or circumscribed as needed. This is true even when that which is condemned is the exercise of *a constitutionally protected right.*"[5]

Griffin v. Tatum, supra, involved one student, Bobby Griffin. The school regulation provided that "Hair must be trimmed and well cut. No Beatle haircuts, long sideburns, ducktails, etc. will be permitted". The school authorities interpreted the regulation to require that the hair in the back must be tapered as opposed to being blocked. Griffin wore his hair in a manner conforming to the regulation in all respects except that it was blocked in the back. Two photographs taken of Griffin at the time showed that he was neat and well groomed. He was suspended from school solely by reason of the fact that his hair was blocked in the back as opposed to being tapered. No claim was made that the overall regulation was invalid. The sole issue presented to the District Court resolved itself into a blocked haircut problem. The District Court concluded that the application of the hairstyle rule to Griffin constituted an arbitrary and unreasonable classification to the extent that it violated the equal protection and due process clauses of the Fourteenth Amendment. The District Court did not stop at this point, but went further and struck the entire regulation. First Amendment grounds were excluded as a basis for the action of the court. The Court of Appeals sustained the decision of the District Court as to the wrongful suspension of Griffin and the striking of the blocked hair prohibition as it was applied to him, under the clearly erroneous rule, but reversed the District Court in striking the entire hairstyle regulation. The court said:

"The clearly erroneous rule is a sufficient basis for affirming the district court as to the wrongful suspension of appellant and for striking the blocked hair prohibition as it was applied to him. * * *

We reverse, however, as to the action of the district court in striking the entire hairstyle regulation. This court held in Ferrell v. Dallas Independent School District, 5 Cir., 1968, 392 F.2d 697, that it was proper for school authorities to establish rules and regulations in the interest of school management and this included a hairstyle regulation. We have not denied school authorities in this circuit the right to promulgate reasonable regulations concerning hairstyles. Such regulations and regulations which deal generally with dress and the like are a part of the disciplinary process which is necessary in maintaining a balance as between the rights of individual students and the rights of the whole in the functioning of schools. The touchstone for sustaining such regulations is the demonstration that they are necessary to alleviate interference with the educational process. Ferrell v. Dallas Independent School System, supra, at p. 703. That such regulations may be necessary and, if so, that they may be promulgated and enforced, is also clear from the tenor of Tinker v. Des Moines Community [Independent] School District, 1969, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed. 2d 731." [6]

5. 392 F.2d at 702, 703.

6. 425 F.2d at 203.

The plaintiffs in the case sub judice do not attack the overall Dress Code, but, rather, only that part regulating hairstyles for male students. This provision of the Code provides:

"Hair may be blocked, but it is not to hang over the ears or the top of the collar of a standard dress shirt and must not obstruct vision."

All parties admit that plaintiffs were in violation of the Code. The only issue presented to the court is the constitutionality of the aforesaid hairstyle regulation. As stated in Griffin v. Tatum, supra, the touchstone for sustaining such regulation is the demonstration that it is necessary to alleviate interference with the educational process.

■ The burden rests upon defendants to show that the hairstyle regulation is reasonably necessary to alleviate interference with the educational process. Richards v. Thurston, 424 F.2d 1281 (1 Cir. 1970).

The issue, then, becomes one of fact for determination by the court.

Plaintiffs testified on the trial of the issue. The gist of their testimony is that their long hair has not created a problem of any nature and has not been a source of distraction to them or to any student or teacher with whom they have come in contact while engaged in school activities.

At the hearing plaintiffs were neat in appearance and their hair was well combed and in place. Plaintiffs testified that they washed their hair daily, and did not pamper their hair during school hours. In short, plaintiffs did not encounter any problem in regard to health or safety, and they did not experience any discipline or school problem.

The testimony of plaintiffs was corroborated by the testimony of Mrs. Pound and Mrs. McGregor.

Plaintiffs stated they desired to wear their hair long to express their feeling and attitude toward changing conditions in the society in which they live, and to express their individuality.

Plaintiff Woody, a married man with one child, also thought his long hair expressed his attitude toward the Vietnamese war. Woody is a pacifist, and a conscientious objector. Woody admitted that his long hair and the wrist band which he wears, prevented him from securing work with at least one merchant who participated in the school's Trade and Industrial Training Program.

The president of the senior class and the president of the student body testified on behalf of plaintiffs. Both of these young men have hairstyles in violation of the Code. They were in violation on January 4, 1971, and were two of the group of young men who were suspended at that time for being in violation of the Code. However, these two students acceded to the demands of the school principal, had their hair trimmed and returned to school. Since the issuance of the injunction in the action sub judice they have allowed their hair to grow and at the time of the trial the hairstyles worn by them were in violation of the Code. These young men were neat of appearance and appeared well groomed. They corroborated the testimony of plaintiffs that long hair worn by male students did not cause problems of any kind in the school. During the school year as many as thirty male students have violated the Code by having hairstyles which cover the ears and extend below the collar of a standard dress shirt.

The evidence presented by defendants is contrary to that presented by plaintiffs. The superintendent of the schools, the high school principal, one junior high school principal, the Trade and Industrial Coordinator, the athletic director and football coach, the librarian at the high school, the Industrial Arts teacher, a chemistry teacher and an instructor in high school English testified that the hairstyle regulation adopted by the school was reasonably necessary to alleviate interference wth the educational process.

The testimony of the superintendent was based upon his long experience in

school work, and especially his experience with the Tupelo schools of which he had been superintendent for more than thirteen years. He testified that it had been his experience that a reasonable dress code for students was necessary to proper discipline in the school; that a Dress Code had been in existence during his tenure with the schools; that many years the Code was not written, but existed through a general understanding with faculty and students; that for the last three years the Code has been written and published; that the Code for the 1970–71 school year is the product of the joint study by faculty and staff personnel; that a proper Dress Code in the schools is absolutely necessary for the maintenance of good community relationship.

In answer to interrogatories propounded to defendants by plaintiffs, and received in evidence by the court, defendants stated that the superintendent of its schools, as well as members of the school board, had received complaints and critical comments from concerned members of the general public about the long hair of male students in the Tupelo schools. The answers to plaintiffs' interrogatories also stated that many teachers had complained to their superiors, the substance of the complaints being that teachers and students were being distracted by male students with long hair who frequently moved the hair around on the head and out of their eyes.

The superintendent's testimony was corroborated by the testimony of the two principals who testified in the case.

The English teacher related instances when gestures by male students, wearing long hair, interfered with instruction in the classroom, distracting her attention and that of students sitting near to them.

The librarian testified that male students with long hair disturbed the work of other students in the library. She stated that male students with long hair have the tendency to primp and congregate; that they do not maintain proper posture, and are the objects of attention by other students. All of this, she testified, creates a disturbing and distracting atmosphere in the room, and is not conducive to good work by the students.

The coordinator of the Trade and Industrial Program found it difficult to place male students with long hair with the trades and industries in the community who participated in the program.

The athletic director and football coach noticed community criticism of male students with long hair, and felt that it was necessary that the school have hairstyle regulations for male students. He testified that without such a regulation the school would suffer by losing some community support for the athletic program.

The coordinator of the Trade and Industrial Program, the chemistry teacher and the industrial arts teacher were of the opinion that hair worn long enough to impair the vision affected the safety of the student, when working around machinery or making tests in the laboratory.

 School authorities are the judges of the existence of circumstances which require the adoption of regulations such as the one in question in this action. If their decision is within the range where reasonable minds may differ their decisions will govern. Butts v. Dallas Independent School District, 436 F.2d 728 (5 Cir. 1971).

 The court finds from the evidence in this case that the defendant school board has met the burden of proof imposed upon it in this action and has shown by the evidence that the hairstyle regulation in question is reasonably necessary to alleviate interference with the educational process. Under the rationale enunciated in Griffin v. Tatum, supra, the defendants are within their rights in adopting the regulation.

An order will be entered dissolving the preliminary injunction heretofore entered in this action and dismissing it on the merits.