WILSON, Circuit Judge,
concurring in part and dissenting in part:
I join Parts I, II-A, and II-B of the majority’s opinion, which hold that there is an issue of material fact as to whether Holloman was punished for failing to say the Pledge of Allegiance (“the Pledge”), which if true, would violate Holloman’s clearly established constitutional right not to say the Pledge. However, I respectfully dissent from Part II-C. In Part II-C, the majority holds that even if Holloman was in fact punished for raising his fist in the air during the recitation of the Pledge rather than for merely failing to say the Pledge, then there is an issue of material fact as to whether his First Amendment right was violated. In addition, the majority holds that such a First Amendment right is clearly established in our case law. I disagree. I contend, rather, that Hollo-man does not have a First Amendment right to raise his clenched fist in the air during the school’s recitation of the Pledge any more than he would have a First Amendment right to raise his fist in the air during math class. Such an act is inherently disruptive, and a teacher has every right to prevent such conduct in his or her classroom in order to prevent any potential disruption.[1] I also believe that even if Holloman had a First Amendment right to raise his fist in the air during the recitation of the Pledge, such a right certainly was not clearly established in our case law.
I agree with the majority’s' conclusion, though, with respect to Part II-D of its opinion. While Holloman’s expression was not constitutionally protected in the classroom because it is inherently disruptive, he still has a clearly established First Amendment right to not be discriminated against on the basis of the viewpoint he is communicating. See Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 812, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (‘While we accept the validity and reasonableness of the justifications offered by petitioner for excluding [the relevant speech], those justifications cannot save an exclusion that is in fact based on the desire to suppress a particular point of view.”). There is a genuine issue of material fact as to whether Allred and Harland were motivated by a desire to suppress Holloman’s apparent unpatriotic viewpoint, which if true, would violate Holloman’s First Amendment right. Thus, I concur with the majority’s conclusion with respect to Part II-D of its opinion.
In addition, I join Part IV of the majority’s opinion, which holds that there is an issue of material fact as to whether Allred violated clearly established rights under the Establishment Clause by leading her class in a prayerful moment of silence. However, while I concur in the result of Part III (for the reasons stated in Part IV of the majority’s opinion), I cannot join the majority’s holding that Allred did not act within her “discretionary function” when she led the class in a moment of silent prayer. I would hold, rather, that Allred acted within her discretionary function *1296 when leading her class in silent prayer, but that she violated the Establishment Clause by so doing.
Finally, I also join Part V of the majority’s opinion only to the extent that it holds that there is an issue of material fact as to whether the School Board may be liable for punishing Holloman for remaining silent during the Pledge (if the factfinder finds that is the reason for his punishment) and for Allred’s practice of leading the class in a prayerful moment of silence.
I.
The majority not only holds that the evidence, reviewed in Holloman’s favor, demonstrates that Holloman had a First Amendment right to raise his clenched fist in the air during the recitation of the Pledge in school, but also that such a right was clearly established. Because the majority’s holding in this regard is neither consistent with Supreme Court precedent nor Eleventh Circuit case law, I respectfully dissent. I would hold that the First Amendment does not give a student in Holloman’s circumstances the right to actively partake in conduct that is inherently disruptive during the curriculum portion of the school day. Yet, even if the First Amendment does grant such a right, that right certainly was not clearly established for qualified immunity purposes.
A.
I agree with the majority that Hollo-man’s act of raising his fist in the air during the Pledge is a form of expression, or indeed, may very well be “pure speech.” It is an act that is, as the majority puts it, “purely communicative as a sign-language gesture or the act of holding up a sign-” Majority Opinion at 1270. I agree that Holloman’s First Amendment right to Free Speech is implicated, but we must be mindful that “the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings.” Bethel Sch. Dist. v. Fraser, 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). “It is always within the province of school authorities to provide by regulation the prohibition and punishment of acts calculated to undermine the school routine.” Blackwell v. Issaquena County Bd. of Educ., 363 F.2d 749, 753 (5th Cir.1966).[2] When balancing the First Amendment right of students at school, we must not forget that the state’s interest to maintain “an orderly program of classroom learning” is a “compelling” one. Burnside v. Byars, 363 F.2d 744, 748 (5th Cir.1966). Thus, public schools have a “wide latitude of discretion” to formulate regulations “pertaining to the discipline of school children.” Id.
Public schools are allowed “to adopt and enforce reasonable, non-discriminatory regulations as to the time, place and manner of student expressions and demonstrations.” Bayless v. Martine, 430 F.2d 873, 878 (5th Cir.1970). Such a regulation may infringe upon a student’s right to free speech only “where the exercise of such rights in the school buildings and schoolrooms do[es] not materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.” Burnside, 363 F.2d at 749. Keeping in mind that schools are given a “wide latitude of discretion,” the critical issue in this case becomes whether Hollo-man’s act of holding his clenched fist in the air during the recitation of the Pledge “materially and substantially interfere[d] *1297 with the requirements of appropriate discipline....” Id. at 748, 749.
The majority cites several cases supporting its view that Holloman’s act was not a sufficient interference to justify a punishment. Yet, some of these cases involve student expression occurring outside the classroom. See, e.g., Shanley v. Northeast Indep. Sch. Dist., 462 F.2d 960, 964 (5th Cir.1972) (involving the distribution of newspapers before and after school hours); Reineke v. Cobb County Sch. Dist., 484 F.Supp. 1252 (N.D.Ga.1980) (involving the censorship of a student newspaper). Certainly, the type and amount of expression occurring outside class that would “interfere with the requirements of appropriate discipline,” Burnside, 363 F.2d at 749, will be different than the type and amount of expression that interferes with appropriate discipline in the classroom. The school has a more compelling interest to establish order and discipline in the classroom because that is where the curriculum portion of the school day occurs.
In addition, those cases cited by the majority that protect student expression within the classroom are easily distinguishable from Holloman’s expression. For instance, the majority relies on Burnside, which held that students wearing “freedom buttons” to class did not cause a sufficient interruption to justify prohibiting students from wearing the buttons at school. Id. We based our holding in Burnside on the lack of evidence demonstrating that “the buttons tended to distract the minds of the students away from their teachers.” Id. at 748 (emphasis added). We held that “[wjearing buttons on collars or shirt fronts is certainly not in the class of those activities which inherently distract students and break down the regimentation of the classroom such as carrying banners, scattering leaflets, and speech making, all of which are protected methods of expressions, but all of which have no place in an orderly classroom.” Id. (emphasis added). In addition, we said,
Regulations which are essential in maintaining order and discipline on school property are reasonable. Thus school rules which assign students to a particular class, forbid unnecessary discussion in the classroom and prohibit the exchange of conversation between students are reasonable even though these regulations infringe on such basic rights as freedom of speech and association, because they are necessary for the orderly presentation of classroom activities.
Id. Our inquiry should focus upon, therefore, whether a student holding his fist in the air during a curriculum portion of the school day is more akin to a student “carrying banners” and “exchang[ing] conversation” during class, rather than wearing a button on the front of one’s shirt. Id.
Activity that can be regulated by a public school, like “unnecessary discussion in the classroom,” “the exchange of conversation between students,” “carrying banners,” “scattering leaflets,” and “speech making,” all have in common the fact that they inherently compete with the teacher for the other students’ attention. Wearing a button on the front of one’s shirt, though, does not compete with the teacher for the students’ attention anymore than a student wearing a shirt advertising a particular sports team. Thus, we must determine whether a student raising his fist in the air during class inherently is the sort of activity that competes with the teacher for the students’ attention, or whether it is a more passive expression like a wearing a shirt or a button conveying a particular message.
I think it is quite clear that a student raising his clenched fist in the air during a curriculum portion of the school day is the sort of activity that inherently competes with the teacher for the other students’ *1298 attention and thus can be prohibited by the school authorities. Holloman’s act of holding his fist in the air during the recitation of the Pledge is, as the majority says, akin to “the act of holding up a sign.” Majority Opinion at 1270. Such expression, unlike a button pinned to one’s shirt, is meant to compete for students’ attention, and thus inherently distracts students from a legitimate portion of the curriculum. Holding one’s fist in the air is more like “carrying banners” which “inherently distract[s] students,” Burnside, 363 F.2d at 748, than wearing a button on a shirt. Would a student have a right to hold up a sign during the recitation of the Pledge, as long as the student does not obstruct others’ view of the flag? The answer to that question is plainly “no.” Holding one’s fist in the air is the same sort of communication as holding up a sign, as the majority even admits. It is meant to compete for students’ attention and unnecessarily distract students from the recitation of the Pledge. It is not a passive expression, like wearing a button on the front of one’s shirt. Like holding up a sign, it inherently is the sort of activity that distracts students during class. While a student may have more freedom to express himself outside of class, students in the classroom are limited to passive expressions that do not inherently distract students. A public school teacher is well within his or her authority to prohibit activity, like a student holding his fist in the air during class, that inherently distracts students.
Even if we were to assume, though, that a student holding his fist in the air during class is not activity that inherently distracts students, there is evidence on the record that Holloman in fact distracted students with his gesture, which would further distinguish the instant action from Burnside. After Holloman’s act of raising his fist during the Pledge, students approached their teacher to complain that Holloman’s expression was not “right.” The majority reasons that this fact alone is not sufficient to show a material disruption. While the majority is correct that schools cannot prohibit expression on the basis that others may disagree with the content of the expression, the students’ comments not only demonstrate disagreement with the content of Holloman’s expression, but also that Holloman’s gesture “distract[ed] the[ir] minds” during a curriculum portion of the school day. Id. The students’ comments demonstrate that they at least focused their attention during a portion of the recitation of the Pledge on Holloman’s fist — which precisely is what is intended by such expression — rather than on the planned curriculum of saying the Pledge.[3]
*1299 If we do not interpret the students’ comments as evidence of distraction, we necessitate absurd results in similar student expressions in the future. The majority’s holding would imply, for example, that a student would be justified in holding up his fist in protest of the Vietnam conflict during a history lesson about Vietnam. Assume that the only evidence of disruption, like in the instant action, is that of students complaining that such a gesture during a class about the Vietnam conflict is not “right.” Does such a circumstance necessarily indicate that the teacher does not have enough evidence of a disturbance to prohibit the student from holding his clenched fist in the air during history class? It would be difficult to conclude otherwise following the reasoning of the majority’s opinion. Such a conclusion, though, would plainly go well beyond what was intended by the First Amendment right to Free Speech as it applies to students in the classroom.
A public school is given “wide latitude” in disciplining its students. Id. The defendants in the instant case had every right to prevent Holloman from distracting the students during a legitimate, curriculum portion of the school day because a student holding his fist in the air is the sort of activity that “inherently distract[s] the minds of students,” and that is exactly what Holloman did here. Id. In the very least, such activity is distinguishable from a student wearing a button on his shirt during class. The result in Burnside does not demand the same result here.
The majority also relies on Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), which held that students had a constitutional right to wear a black arm band during class in protest of the Vietnam conflict. Id. at 514, 89 S.Ct. 733. The Court in Tinker, relying heavily on our reasoning in Burnside, said that wearing an arm band was not “disruptive action,” nor was there any evidence of “interference, actual or nascent, with the school’s work.” Id. at 508, 89 S.Ct. 733.
The instant case is distinguishable from Tinker for the same reason it is distinguishable from Burnside. Wearing a button or an arm band is passive activity that does not inherently distract students during the curriculum portion of the school day, unlike raising one’s fist in the air. Also, in Tinker there was no evidence of any interference or distraction during class. In the instant case, however, we have evidence of students, at the very least, being distracted for a portion of the Pledge due to Holloman’s gesture. I fail to see how it follows that a right to wear a button or an arm band during class means that a student has a right to raise his fist during class. The result in Tinker, like Burnside, is inapposite to the instant action.
Finally, the district court relies on the reasoning and holding of Banks v. Bd. of Pub. Instruction, 314 F.Supp. 285 (S.D.Fla.1970), vacated by 401 U.S. 988, 91 S.Ct. 1223, 28 L.Ed.2d 526 (1971), reinstated without published opinion by dist. ct. and aff'd, 450 F.2d 1103 (5th Cir.1971). In Banks, the Southern District of Florida held that a student has a constitutional right to remain seated during the recitation of the Pledge in class. The district *1300 court in Banks, according to the majority’s interpretation, held that refusing to stand was a form of expression that was protected by the First Amendment, and that the “district court makes clear that its ruling was not based on Banks’s First Amendment right to remain silent.” Majority Opinion at 1273. The majority concludes that the expression of remaining seated during the Pledge is akin to Holloman’s holding his fist in the air during the Pledge, and thus Holloman’s expression is entitled to First Amendment protection.
In addition to the fact that a district court holding is not binding authority on this Court, it is not at all “clear that [the district court’s] ruling was not based on Banks’s First Amendment right to remain silent.” Majority Opinion at 1273. The court in Banks discussed extensively the reasoning of West Virginia St. Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), which held that a public school cannot compel a student to participate in the Pledge. After discussing Barnette, the district court in Banks said,
Without more Barnette would be dispos-itive of this matter for [the plaintiff] was suspended for his refusal to act in accordance with a regulation, the operation of which prevented him from exercising his First Amendment rights.
Banks, 314 F.Supp. at 295. The court continued later in the opinion,
Here, as in Barnette, the regulation required the individual to communicate, by standing, his acceptance of and respect for all that for which our flag is but a symbol.
Id. at 296. In other words, the district court’s holding was based on the reasoning of Barnette. The school’s policy of forcing a student to stand during the Pledge violated the student’s First Amendment right not to be compelled to speak or express a particular belief. Any discussion by the district court in addition to this more limited holding is arguably dictum.
As the majority points out, the court in Banks also said that remaining seated during the Pledge “was no less a form of expression than the wearing of the black arm-band was to Mary Beth Tinker. He was exercising a right ‘akin to pure speech.’ ” Id. at 295. I agree that a student may intend to express himself by remaining seated — yet I do not agree that it follows that the Tinker-Bumside standard applies to a student who merely remains seated during the Pledge. Remaining seated during the Pledge is a way for a student not to participate in the Pledge. Thus, such a decision is afforded the more absolute protection of Barnette, in which the Supreme Court said,
If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.
Barnette, 319 U.S. at 642, 63 S.Ct. 1178 (emphasis added). Forcing a student to stand during the Pledge would be compelling that student to “confess by ... act [his] faith” in the content of the Pledge and all that it symbolizes. Id. (emphasis added). Such a regulation would violate the central principle of Barnette. See Lipp v. Morris, 579 F.2d 834, 836 (3rd Cir.1978) (per curiam) (holding that forcing a student to stand is unconstitutional because it requires a student “to engage in what amounts to implicit expression by standing at respectful attention while the flag salute is being administered”).
While it is true that remaining seated during the Pledge may also be construed as a way of speaking, remaining seated is already in the class of those activities that are afforded the more absolute protections *1301 of ¡Barnette — i.e., the right not to participate in the Pledge. To hold that the Tinker-Bumside standard applies to a student who remains seated during the Pledge would limit a student’s right not to participate in the Pledge. If it can be shown that a student, or a group of students, who do not participate in the Pledge by remaining seated causes a material disruption, we would be forced to defer to the school’s decision to compel students to stand during the Pledge. Such a ruling would allow a public official to “force citizens to confess by ... act their faith” in the content of the Pledge and ,all it symbolizes. Barnette, 319 U.S. at 642, 63 S.Ct. 1178. As a result, the “fixed star in our constitutional constellation” would become: contingent upon the degree of disruption judges decide is too much in a particular classroom. Limiting the central right of being free to abstain from participating in the Pledge should not be limited by applying the Tinker-Bumside standard to a decision more absolutely protected by Barnette.
A student may decide not to participate in the recitation of the Pledge by remaining silent and seated. In such circumstances, the holding in Barnette applies. On the other hand, raising one’s fist in the air during the Pledge is not a way in which a student abstains from participating in the Pledge. It can only be construed as expression. Thus, Barnette and Banks are not applicable to Holloman’s act, but rather Tinker and Burnside apply. As I indicated above, I believe Holloman’s act of raising his fist in the air during class is easily distinguished from the act of wearing a button or an arm band during class because raising one’s fist in the air during the curriculum portion of the school day inherently distracts students, and thus materially disrupts the requirements of appropriate discipline.
Reciting the Pledge of Allegiance during the school day is a legitimate activity of the curriculum, just as legitimate as conducting naath or history class. While a student is not required to participate in the Pledge, a student cannot engage in expressive conduct that inherently distracts the minds of the students from a legitimate portion of the school day. I would hold that there is no issue of material fact as to whether the school was justified in punishing Holloman, if that punishment was based on his act of raising his fist in the air during the recitation of the Pledge of Allegiance and was not motivated by a desire to suppress Holloman’s point of view.
B.
Even if Holloman has a First Amendment right to hold his fist in the air during the recitation of the Pledge in class, such a right was not “clearly established.” Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L,Ed.2d 396 (1982)). In order for a right to be clearly established, the public official must be given “fair warning” that his or her conduct violates a statutory or constitutional right. See id. at 741, 122 S.Ct. 2508. Recently, the Supreme Court in Hope held that we improperly used a “rigid gloss” when demanding that the facts of previous cases be “materially similar” to the facts of the applicable case in order for the law to be clearly established. Id. at 739,122 S.Ct. 2508. There are other ways, though, besides comparing the facts of the instant case with the facts of previous cases, to determine if a public official was given “fair warning” that a certain act violated a statutory or constitutional provision. There are some cases in which the law provides “obvious clarity,” even in the absence of instances in which courts have applied a general principle to particular *1302 facts. See Vinyard, v. Wilson, 311 F.3d 1340, 1351 (11th Cir.2002). The majority holds that Holloman’s constitutional right to put his fist in the air during the recitation of the Pledge is clearly established because the Tinker-Bumside standard was “sufficiently specific” to give the defendants fair warning. See Majority Opinion at 1278-79. I respectfully disagree with both the majority’s analysis and conclusion.
There are three ways in which we can find that the law is clearly established so as to give public officials fair warning that a particular act violates a statutory or constitutional right. First, the words of a statute or constitutional provision can be specific enough to clearly establish the law applicable to particular conduct and circumstances, even in the absence of any case law. Vinyard, 311 F.3d at 1350. No one alleges that such a case is present here. Second, sometimes “broad statements of principle in case law [that] are not tied to particularized facts ... can clearly establish law applicable in the future to different sets of detailed facts.” Id. at 1351. The majority believes that such a case is present here, while I do not. I will address my disagreement below. Finally, and this is true in the vast majority of our qualified immunity cases, we inquire whether fact-specific precedents are “fairly distinguishable” from the facts facing a government official. Id. at 1352. I think this is the proper inquiry in the instant case. Using this inquiry, I would conclude that the precedent is fairly distinguishable from the circumstances in this case, and thus the defendants were not given fair warning that disciplining a student for raising his fist in the air during the Pledge was unconstitutional.
The majority considers whether the test, by itself, articulated in Tinker and Burnside clearly establishes that Holloman’s act was constitutionally protected. The Tinker-Bumside test is whether the student expression “materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school.” Burnside, 363 F.2d at 749. The majority claims this test is “sufficiently specific” to give the defendants fair warning that Holloman’s expression was constitutionally protected because it is reasonable “to expect the defendants — who hold themselves out as educators — to be able to apply such a standard, notwithstanding the lack of a case with material factual similarities.” Majority Opinion at 1278. In addition, the majority says applying this test would be “effortless,” as “[a] teacher or principal should be able to instantly recognize whether a student is disrupting class, and it should not be too hard to determine whether a student’s activities are likely to have such an effect.” Majority Opinion at 1279.
These reasons articulated by the majority are irrelevant to our analysis. The defendants thought that Holloman’s act was not constitutionally protected — that is, they believed that his act “materially and substantially interfere[d] with the requirement of appropriate discipline.” Bum-side, 363 F.2d at 749. It simply does not follow that because it is “not too hard” for teachers to determine when a student disrupts class, that it is then obvious to every reasonable teacher that a certain disruption will survive judicial scrutiny. In other words, teachers cannot be expected to readily determine what conduct falls within the Court’s definition of “material and substantial interference with appropriate discipline.” Id. Reasonable people certainly can disagree about how the Court will apply such a general standard, especially to the facts of the instant action. See Vinyard, 311 F.3d at 1351 (“[I]f a broad principle in case law is to establish clearly the law applicable to a specific set *1303 of facts facing a governmental official, it must do so ‘with obvious clarity’ to the point that every objectively reasonable government official facing the circumstances would know that the official’s conduct did violate federal law when the official acted.”).
I do not think that the balancing test we use in our Free Speech cases established with “obvious clarity” that a student can raise his fist in the air during the curriculum portion of the school day. We define our broad standard of “materially and substantially interferfing] with the requirements of appropriate discipline” as including “those activities which inherently distract students” during class. Burnside, 363 F.2d at 749, 748. A reasonable teacher could conclude that a student raising his fist in the air during a curriculum portion of the school day is the sort of activity that “inherently distraet[s] students.” Id. at 748. Thus, the defendants were not given fair warning by our case law that they were prohibited from punishing Holloman for his expressive act.
In the alternative, the majority states that Holloman’s right to raise his fist in the air during the Pledge is clearly established under Barnette. In Barnette, the Supreme Court held that a public school cannot compel a student to participate in the Pledge. 319 U.S. at 642, 63 S.Ct. 1178. The majority says that it is “very reluctant” to conclude that Holloman shed his First Amendment protection to remain silent during the Pledge by simply lifting his fist into the air. Majority Opinion at 1279. “This is a hair we will not split,” according to the majority because, I assume, “First Amendment protections are not lost that easily.” Majority Opinion at 1279.
Yet, this is precisely the “hair” the majority “split” earlier in its own opinion. For instance, the majority in Part II-B-1 persuasively establishes that there is an issue of material fact as to whether Hollo-man was punished for failing to say the Pledge or for raising his fist in the air. This was a proper distinction to make, because the answer to that question determines whether Barnette applies or whether Burnside and Tinker apply. Barnette prohibits a school from compelling a student to say the Pledge. Burnside and Tinker prohibits a school from preventing a student from voluntarily engaging in expression, as long as that expression does not sufficiently interfere with proper discipline in the classroom. Holloman’s act of raising his fist in the air, as the majority aptly pointed out, is what made his act expression, rather than just a failure to participate in the Pledge. In other words, Holloman’s act of raising his fist is exactly what allows us to apply Burnside and Tinker. To conclude later, when considering whether Barnette clearly establishes Holloman’s right to raise his fist, that it is no longer legally significant that Holloman raised his fist, is inconsistent.
Barnette holds that a student cannot be compelled to speak. Barnette says nothing about a student’s right to speak. Hol-loman “spoke” by raising his fist. Thus, Barnette is not relevant to this inquiry.
For the reasons that I articulated above for why I believe Holloman’s expression is distinguishable from the expression in Tinker and Burnside, I would hold that the law was not clearly established that Holloman had a right to raise his fist in the air during the recitation of the Pledge in class.
II.
I agree with the majority’s conclusion that Allred is not entitled to qualified immunity for leading the class in a moment of silent prayer. Such action, as aptly pointed out in Part IV of the majority’s *1304 opinion, violates the Establishment Clause. See Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). Thus, I join Part IV of the majority’s opinion. However, the majority also held, in Part III, that Allred is not even potentially entitled to summary judgment on qualified immunity grounds against Holloman’s Establishment Clause claim because leading the class in a moment of prayerful silence is not within her “discretionary function.” I think that such an interpretation stretches our inquiry of “discretionary function” beyond what is articulated in our case law. Thus, I would find that (1) Allred’s act of leading her class in a prayerful moment of silence was within her discretionary authority, but (2) such an act was unconstitutional under the Supreme Court’s interpretation of the Establishment Clause.
A government official acts within his discretionary authority when his actions “were undertaken pursuant to the performance of his duties and within the scope of his authority.” Sims v. Metro. Dade County, 972 F.2d 1230, 1236 (11th Cir.1992) (internal quotations omitted). We must keep in mind that our “inquiry is not whether it was within the defendant’s authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology.” Harbert Int’l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir.1998) (internal quotation omitted). Thus, just because a defendant’s act may be unconstitutional does not mean that the act was not within the defendant’s discretionary authority.
In the instant action, the Alabama state legislature enacted a statute requiring local school boards to “implement ... a comprehensive character education program ... focusing upon the students’ development of ... compassion.” Ala.Code § 16-6B-2(h). Allred claims she promoted compassion by asking the students for prayer requests before observing a moment of silence. While such an act would not pass muster under the Supreme Court’s interpretation of the Establishment Clause, it is a legitimate way to promote compassion. Asking students to offer prayers for other people may habituate students to think of others by praying for them. Thus, I agree with the majority that Allred’s act was pursuant to her job related goal of promoting compassion.
The majority believes, though, that while Allred’s act of leading her class in a prayerful moment of silence was pursuant to a job related function, it was not within the scope of her authority. The majority states that “[pjraying goes sufficiently beyond the range of activities normally performed by high school teachers,” because “[pjrayer is a relatively sui generis activity.” Majority Opinion at 1283. Yet, the “sui generis activity” of praying in public schools was “normally performed” prior to the Supreme Court’s decision in Engel. Indeed, even today, many teachers in private high schools throughout America, whether they be religious or secular, lead their students in prayer. Public school teachers no longer have the authority to lead their classes in prayer by virtue of the fact that the Supreme Court ruled it unconstitutional. It was certainly within the scope of a public high school teacher’s authority to lead students in prayer prior to 1962, when the Court ruled that teacher led prayer in public schools is a violation of the Establishment Clause. The fact that a particular act may now be deemed unconstitutional does not mean that such an act is outside the scope of a public official’s discretionary authority. See Harbert, 157 F.3d at 1282. There must be some other reason, besides the fact that a particular activity is unconstitutional, for that activity not to be within a public authority’s scope of authority. I do not see an additional reason, besides the unconstitutionality of *1305 school prayer, in the majority’s opinion giving me reason to believe that Allred’s act was not within her discretionary authority. And neither can I think of one. Thus, I cannot join Part III of the majority’s opinion. Its application of the “discretionary authority” requirement to Allred’s act of leading her class in silent prayer is too stringent. However, I agree that All-red is nonetheless not entitled to qualified immunity for the reasons the majority states in Part IV of its opinion.
III.
A student raising his fist in the air during a curriculum portion of the school day engages in an act that inherently distracts student during class. A teacher, therefore, may prohibit a student from engaging in such activity. Thus, I cannot join Part II-C of the majority opinion’s in which it holds that there is an issue of material fact as to whether Holloman’s First Amendment right to free speech was violated if he was punished for holding his fist in the air during the recitation of the Pledge and if that punishment was not motivated by a desire to suppress a particular viewpoint. I also dissent from the majority’s holding that Holloman’s right to hold his fist in the am was clearly established for qualified immunity purposes.
In addition, while I agree with the majority’s conclusion that there is an issue of material fact as to whether Allred violated Holloman’s clearly established right under the Establishment Clause when Allred led the class in a moment of silent prayer, I cannot join Part III of the majority’s opinion. In my view, Allred acted within her discretionary function when leading her class in prayer.
Finally, I join Part V of the majority’s opinion, but only to the extent that it holds that the School Board may be held liable if Holloman was punished for remaining silent during the Pledge and for Allred’s act of leading her students in silent prayer. Thus, I concur in part and dissent in part with the majority’s opinion.

. We are not called upon to decide the propriety of the type of punishment inflicted here.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

. The majority claims that this approach "appears to ignore the principle ... that student expression must cause (or be likely to cause) a 'material and substantial' disruption ... before it may be curtailed.” Majority Opinion at 1272. I do not ignore this principle, but rather disagree with the majority by what we meant in Burnside when we said that public schools can only infringe on a student’s speech when it "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school.” Burnside, 363 F.2d at 749. One of the "requirements of appropriate discipline” is preventing students from competing with the teacher or with the curriculum for other students’ attention. For instance, we said in Burnside that a school may prohibit "the exchange of conversation between students” during class. Id. at 748. Thus, a teacher may prohibit and punish a student for whispering to his classmate during class, even if it causes a "brief, easily overlooked, de minimum impact.” Majority Opinion at 1272. One student whispering to another student during class competes with the teacher for the attention of other students, and thus "materially and substantially interfere[s]” with one of the fundamental "requirements of appropriate discipline.” Burnside, 363 F.2d at 749.
*1299 Similarly, Holloman’s act of raising his fist in the air during the Pledge competed for the students’ attention during a legitimate curriculum portion of the school day. Indeed, some of the students’ reaction after class indicated that he successfully distracted students from the recitation of the Pledge. Thus, Hol-loman’s act "substantially and materially interfere[d] with the requirements of appropriate discipline” because it "tended to distract the minds of the students away from” the recitation Pledge. Id. at 749, 748.